County of Ellis v. Wilson 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-021-CV

     COUNTY OF ELLIS, THROUGH ITS ELLIS
     COUNTY COMMISSIONERS COURT,
                                                                                              Appellant
     v.

     GORDON W. WILSON, ARCHITECT AND PLANNERS, INC.,
                                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 43,088
                                                                                                    

OPINION ON APPELLANT'S MOTION FOR REHEARING
                                                                                                    

      On original submission we held that Ellis County waived its complaints, except with regard
to the trial court's award of prejudgment interest, by filing a motion for judgment based on the
jury's finding of actual damages. On motion for rehearing, the county now argues that, because
the trial court's judgment directly and adversely affects the interest of the public generally as that
interest is declared in the Texas Constitution, the error in the trial court's award of actual damages
against the county is fundamental and cannot be waived.


 Assuming, without deciding, that the
complaint involves fundamental error, we will consider the first point raised by the county on
original submission.



      The county contends that the court erred in denying its motion for instructed verdict and its
motion for judgment notwithstanding the verdict, arguing that, as a matter of law, the contract was
void. The county's argument is based on the following ambiguous provision of the Texas
Constitution:
Sec. 7. All counties and cities bordering on the coast of the Gulf of Mexico are
hereby authorized upon a vote of the majority of the resident property taxpayers voting
thereon at an election called for such purposes to levy and collect such tax for
construction of sea walls, breakwaters, or sanitary purposes, as may now or may
hereafter be authorized by law, and may create a debt for such works and issue bonds in
evidence thereof. But no debt for any purpose shall ever be incurred in any manner by
any city or county unless provision is made, at the time of creating the same, for levying
and collecting a sufficient tax to pay the interest thereon and provide at least two per cent
(2%) as a sinking fund; and the condemnation of the right of way for the erection of such
works shall be fully provided for.




      Wilson argues that, by its placement in a section dealing with public works along the Gulf
Coast, the sinking-fund provision does not apply to its contract with Ellis County. Regardless of
whether the sinking-fund provision is read in the context of section seven or as an independent
constitutional limitation on the county's ability to contract, the applicability of that provision to
this case depends on the meaning of the term debt. The Texas Supreme Court has held that the
term debt, as used in article eleven, sections five and seven, of the Texas Constitution, "means
any pecuniary obligation imposed by contract, except such as were, at the date of the contract,
within the lawful and reasonable contemplation of the parties, to be satisfied out of the current
revenues for the year, or out of some fund then within the immediate control of the corporation."



      In this case, a typewritten addendum to the pre-printed American Institute of Architects
Standard Form of Agreement Between Owner and Architect provides evidence that the parties
contemplated satisfaction out of the county's general revenue fund, at least for the Program and
Preliminary phase and the Schematic Design Phase of the contract. Article 15 of the agreement
provides:
Initial program and first preliminary is included as part of the basic service.
This contract is contingent upon issuance of a Certificate of Obligation or successful
passage of a Bond Issue.
If the issuance of a Certificate of Obligation is not successful or the Bond Issue is not
successful, The architect shall be paid the percentage allocated through the Schematic
Design Phase or reimbursed for the hourly time and expenses incurred, whichever is less.
Upon completion of the jail, said jail shall be certified by the Texas Commission on
Jail Standards, based on plans approved by the County.
The preliminary program fee shall not exceed $15,000.

(Emphasis added).
      On December 1, 1986, the county paid the preliminary program fee of $15,000 out of its
general revenue fund. Wilson continued work on the Schematic Design Phase of the contract until
it was terminated by the county on April 23, 1987. Even though the remainder of the project was
contingent upon a successful bond issue or certificate of obligation, the county agreed to pay for
work done through the Schematic Design Phase, obviously contemplating payment for that phase
with general revenue funds. We hold that the pecuniary obligation imposed by the contract for
architectural services through the Schematic Design Phase is not a debt within the meaning of
article eleven, section seven, of the Texas Constitution.


 Accordingly, we overrule point of error
one.
      We deny the county's motion for rehearing.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Denied
Opinion delivered and filed August 31, 1993
Do not publish